UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

BEECHWOOD DEVP., LLC

          Plaintiff,

v.

OLYMPUS TERRACE SEWER DISTRICT,

          Defendant.

No. C05-0745 MJP

ORDER GRANTING DEFENDANT'S MOTION TO DISMISS PURSUANT TO FED.R.CIV.P. 12(b)(1)

      This matter comes before the Court on Defendant's Response to the Court's Order regarding submission of information concerning jurisdiction. (Dkt. No. 39). Defendant's Response challenges (1) whether Plaintiff is the real party in interest for the purposes of diversity jurisdiction and (2) whether this Court is divested of jurisdiction pursuant to 28 U.S.C. § 1342 (the "Johnson Act"). The Court construes Defendant's Response as a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(1). Having received and reviewed these motions, the parties' responses and replies, and all documents submitted, the Court finds that it lacks jurisdiction over this case pursuant to the Johnson Act. Accordingly, the Court GRANTS Defendant's motion to dismiss for lack of jurisdiction and does not reach whether Beechwood is the real party in interest.

## BACKGROUND

      Beechwood won the rights to build a hotel on Paine Field in Snohomish County (the "County"). Those building rights, however, were subject to a lease negotiated with the County providing for "reasonable charges" for sewer connection and fees. Pursuant to a sewage disposal

ORDER - 1

agreement with the County, the District provides sewer service to Paine Field, including the hotel to be built by Beechwood.

RCW 57.08.005(10) gives the District the power to charge a reasonable sewer connection fee established by an adopted comprehensive plan (the "Comp Plan").  Accordingly, between the years 1999 and 2004, the District's Board of Commissioners (the "Board") adopted several resolutions increasing such fees.  However, the Comp Plan establishing these fees was approved by voice vote in March 1998 rather than by resolution as required by RCW 57.16.010(6).

On March 30, 2005, after objecting to improperly adopted fees, Beechwood submitted a sewer connection application and paid a fee of $322,000 to the District under protest.  Later that evening the Board adopted the Comp Plan by resolution.

## ANALYSIS

### I. Plaintiff's Motion to Dismiss Pursuant to the Johnson Act

The District argues that the Johnson Act divests this Court of jurisdiction over this case.  The Johnson Act provides that:

> [t]he district courts shall not enjoin, suspend or restrain the operation of, or compliance with, any order affecting rates chargeable by a public utility and made by a State administrative agency or a rate-making body of a State political subdivision, where:
> (1) Jurisdiction is based solely on diversity of citizenship or repugnance of the order to the Federal Constitution; and,
> (2) The order does not interfere with interstate commerce; and,
> (3) The order has been made after reasonable notice and hearing; and,
> (4) A plain, speedy and efficient remedy may be had in the courts of such State.

28 U.S.C. § 1342.  The parties do not dispute that conditions (1)–(4) set forth above are satisfied.  However, Beechwood argues the Act does not apply here because the "connection charges" in dispute are not "rates," and therefore, not within the scope of the Act. The Court finds that it lacks jurisdiction pursuant to the Johnson Act for the three reasons discussed below.

ORDER - 2


## A. Construction of the Johnson Act

The legislative history of the Johnson Act demonstrates that Congress was concerned with protecting the authority of states "to perform their proper functions in the supervision and fixing of rates, without interference of Federal law." 78 Cong. Rec. 8324 (1934) (statement of Rep. Mapes). In fact, legislative history shows that those on both sides of the debate over the Act acknowledged that it completely withdraws rate cases from Federal jurisdiction. Brooks v. Sulphur Springs Valley Elec. Coop., 951 F.2d 1050, 1054 (9th Cir. 1991). Accordingly, the legislative history of the Johnson Act supports a broad interpretation of its jurisdiction-limiting effect. Id.

Ninth Circuit precedent reflects such broad interpretation of the Johnson Act. In US West, Inc. v. Nelson, 146 F.3d 718, 726 (9th Cir. 1998), the court held that the Johnson Act barred jurisdiction over a challenge to accounting practices employed by the Washington Utilities and Transportation Commission (the "Commission"). At issue in that case was whether the Commission could impute income to US West from its affiliates in setting the rates US West could charge. Id. at 721. US West argued that the Commission's imputation practices constituted a policy rather than "an order affecting rates." Id. The court rejected US West's argument, citing Hanna Mining Co. v. Minnesota Power and Light Co., 573 F.Supp. 1395, 1401 (D.Minn 1983), which held that any ruling that would obviously undercut the agency's authority would challenge an "order affecting rates" within the meaning of the Johnson Act. US West, 146 F.3d at 722.

The US West court held that the Commission's imputation practice was an "order affecting rates" for three reasons. First, the practice was integral to the rate-making system. Id. Second, the relief sought by US West "might have an impact on future rate orders." Id. And third, allowing parties to bring indirect challenges to rate orders would allow them to circumvent the Act. Id. But cf. Shrader v. Horton, 471 F.Supp. 1236 (W.D. Va. 1979) (order mandating public water connection is not an "order affecting rates" despite that it may indirectly affect rates by adding users to the system). The US West court's reasoning demonstrates that, in the Ninth Circuit, the Johnson Act divests the district courts of jurisdiction even when the case does not involve "rates" per se. Evidence submitted

ORDER - 3

by the District demonstrates that revenues from general facilities charges (GFC), such as sewer connection charges, have a direct and measurable impact on "service rates." (Emery Decl. at 2-3). Because GFC revenues are a necessary variable in the District's rate calculations, a challenge to the rate regime may impact future rate orders as well. Id. Thus, Beechwood's argument that sewer "connection charges" are not "rates" is not enough to carry the day in light of US West.

**B.  Application of the Johnson Act**

Federal courts in other circuits have applied the Johnson Act under circumstances similar to those in this case. See US West, 146 F.3d at 722 n.2 (reasoning that because Ninth Circuit cases addressing the Johnson Act are few, it is appropriate to consider cases from other circuits). In Miller v. NYS Pub. Serv. Comm'n, 807 F.2d 28, 31 (2nd Cir. 1986), for example, the plaintiff sued a public utility to recover money he was charged for an outdoor water hose connection that he could not lawfully use during a drought. While the primary issue in the case was whether a district court could grant compensatory damages to a public utility customer, the court held that a "hose connection charge is an 'order affecting rates'" for purposes of the Act. The striking similarity between a sewer "connection charge" and a hose "connection charge" suggests that an order concerning the former also affects rates for the purposes of the Act.

Further, cases cited by Beechwood are distinguishable from the present case. The cases cited above demonstrate that courts typically apply the Johnson Act when the challenged order establishes rates, fees, or charges, or the method by which they are calculated. Similarly, the present case involves the direct assessment of a monetary burden. In contrast, the cases cited by Beechwood involved orders requiring, sanctioning, or prohibiting some other type of action on the part of the utility or its customers. See, e.g., Alabama Pub. Serv. Comm'n v. S. Ry. Co., 341 U.S. 341 (1951) (order denying railway permission to discontinue its rail service); Carlin Comm. Inc. v. S. Bell Tel. Co., 802 F.2d 1352 (11th Cir. 1986) (utility's tariff provision terminating service to customers disseminating sexually explicit content); Shrader, 471 F.Supp. at 1237 ( mandatory connection ordinance for a new public water system).

ORDER - 4

**C. Distinguishing Service Rates and Connection Charges**

Beechwood argues that differences in treatment of "service rates" and "connection charges" under the Revised Code of Washington demonstrate that the Act should not apply in this case. Specifically, Beechwood notes that, unlike "service rates," "connection charges" are only valid if based on a comprehensive plan. (Beechwood Resp. at 4). While the Washington legislature may have established different procedures for the adoption of various rates and charges, case law demonstrates that such distinctions make no difference regarding whether Federal jurisdiction exists in this case. Tennyson v. Gas Service Co., 506 F.2d 1135 (10th Cir. 1974) is illustrative. In that case, plaintiffs challenging late charges assessed by gas and electric companies argued that the charges were not rates, but interest, and therefore, beyond the scope of the Act. Id. at 1140. The court, however, reasoned that such differentiation does not go to the core of the issue since the Act proscribes federal interference not solely with "rates" but with "any order affecting rates." Id. at 1140. Because the late charges were an integral part of the Commission's rate structure, the court held that the challenged rulings affected rates. Again, the District must consider current and projected GFC revenues in setting "service rates." (Emery Decl. at 2-3). Thus, even if sewer connection charges are distinguishable from "rates" on some level, the Court finds that they still affect rates and, as a result, trigger application of the Johnson Act.

**II. The Real Party in Interest**

Because the Court dismisses this case pursuant to 28 U.S.C. § 1342 it does not reach whether Beechwood is the real party in interest for diversity purposes.

ORDER - 5

### III. Conclusion

The Johnson Act divests this Court of jurisdiction over this case for three reasons. First, in the Ninth Circuit, the Johnson Act is interpreted broadly to protect the authority of states to supervise and fix rates without interference from Federal law. Second, Federal courts have applied the Johnson Act to limit jurisdiction under circumstances similar to those of this case. Finally, revenues related to sewer connection charges challenged in this case are an integral part of the District's rate calculations, and therefore, affect rates. Accordingly, the Court GRANTS Defendant's motion to dismiss pursuant to 28 U.S.C. § 1342. All other pending motions relating to this case are stricken as moot.

The Clerk of the Court shall direct a copy of this order be sent to all counsel of record.

Dated: October 12, 2005.

<div style="text-align:right">
s/Marsha J. Pechman<br>
Marsha J. Pechman<br>
United States District Judge
</div>

ORDER - 6